### PRITCHETT v. ETHERIDGE et al.
#### No. 12398.

United States Court of Appeals
Fifth Circuit.
Feb. 25, 1949.

Donald Gay, of Dallas, Tex., for appellant.

William P. Fonville, Asst. U. S. Atty., of Dallas, Tex., for appellees.

Before HUTCHESON, HOLMES, and LEE, Circuit Judges.

HOLMES, Circuit Judge.

This is an action by Mrs. Etheridge and her present husband to recover the proceeds of insurance upon the life of her former husband, Jack Pritchett, a veteran of World War II. She bases her claim upon a change of beneficiary, in her favor, alleged to have been made at the hospital on January 21, 1946, seven days prior to the insured's death. The sole issue upon the trial below depended upon the mental capacity of the insured to make the purported change. Upon this issue the hospital records, which were excluded below, were competent, relevant, and material evidence.

Long prior to the trial, in accordance with 38 U.S.C.A. § 445, the appellant moved for an order directing the issuance of subpoenas for material witnesses, residing more than 100 miles from the court, who could testify not only as to above issue but as to the identity of the original hospital records. The court denied this motion, and later at the trial it refused to permit said records to be introduced in evidence on the ground that they were not properly identified. We think there was sufficient evidence before the court to warrant the reasonable inference that the records offered in evidence were the original hospital records, which tended to show the mental condition of the deceased on and before January 21, 1946, and thereafter until the time of his death. These records were in court at the time of the trial, in the possession of the United States Attorney, and if their authenticity was likely to be objected to on technical grounds, as the appellant's motion indicated, then it was an abuse of discretion on the part of the court to deny appellant's motion to subpoena witnesses to prove his case.

The appellant claimed that the hospital records would show that the patient was disoriented and irrational at the time in question, and that with those records before them the hospital doctors would swear that the insured could not have understood the nature and effect of his act. The records were in Texas, the doctors in New Mexico; and the motion, which the court below denied, was for the purpose of permitting the doctors to testify with the records before them. Originally, both the records and the doctors were in New Mexico, but the Chief of the Claims Division of the Veterans Administration ordered these records sent to Washington, and on the strength of them the Veterans Administration refused to change the beneficiary from the father to the widow.

This suit was filed April 19, 1947; obviously the hospital records were then turned over to the Department of Justice, and in due course were forwarded to the United States attorney who by his assistant, was handling the case in the district court. They were in his official custody at the time he produced them in court, but he refused to agree that they were authentic, and the court below refused to allow appellant's attorney to introduce them in evidence. This action of the court, in connection with its prior action on the motion of appellant to be permitted to subpoena witnesses, prevented the facts indicated by the hospital

records from being introduced in evidence at the trial.

There was no lack of diligence on the part of appellant's attorney in attempting to get before the court the pertinent facts as revealed by the records in question. His efforts were directed toward compliance with every technicality requisite to the competency of this evidence. It was not a copy of the records that was offered, the certification of which was required in accordance with some rule or statute; the document in the possession of the assistant United States attorney (which is copied in full in the transcript) purported to be, and we have every reason to believe was, the genuine original record of the United States Veterans Hospital in which the insured died.[1] The witness was in the court below with the purported record in his possession; we do not know exactly what his evidence would have been, because the rulings of the court were adverse to his being examined on the subject. As to what happened on the trial immediately before and after this witness took the stand, we quote from the transcript, pages 37 to 44, as follows:

"Mr. Gay: If it please the Court, if I may use these hospital records, introduce them in evidence, I think we can finish with Dr. Witt by one o'clock.

"The Court: Well, they don't see fit to agree to the introduction of them without proof as to what they are. I can't admit them over that objection. You have to prove that they are hospital records, that they are correctly made, and things of that kind.

"Mr. Reagan: If the Court please, I haven't seen them.

"The Court: I am not asking you to do anything. I am merely asking the other side—

"Mr. Gay: If it please the Court, I would like to call to the Court's attention some of the history of some of these hospital records.

"The Court: No use to call my attention to anything. The thing to do is produce proof. They don't seem to agree with you,

and that is all there is to it. I haven't any right to—

"Mr. Gay: May Mr. Harrell be sworn, Your Honor?

"Oscar Morris Harrell, being first duly sworn, examined in chief by Mr. Gay, testified as follows:

"Q. State your name, address, and occupation, please, sir.

"A. Oscar Morris Harrell, 5735 Velasco, Dallas, Texas, Assistant United States District Attorney.

"Q. Mr. Harrell, I hand you herewith a folder that I will ask to be marked for identification as Defendant's Exhibit No. 1. I will ask you what that folder is, please, sir.

"(Said folder was marked Defendant's Exhibit No. 1.)

"The Court: He couldn't possibly know, he didn't make it. Somebody handed it to him and told him it was the hospital records. That is all you know, isn't it?

"Mr. Harrell: That's right.

"Mr. Gay: Your Honor, I would like to state to the Court that this has been in the possession of the United States District Attorney for some time.

"The Court: That doesn't make any difference. He doesn't know what it was.

"Mr. Gay: We would like to show how it came into his possession. It came through official channels.

"The Court: I have ruled, Mr. Gay, so put yourself in line with the ruling. He said that all he knows about it is somebody gave it to him and told him it was the hospital records. That is hearsay. That is no proof of their accuracy and no proof of where it came from.

"Mr. Gay: I would like to make one statement to the Court, if I may, sir. After this case was first filed, the Defendant, Mr. Pritchett, filed a motion under a special law allowing Veteran employees to be brought in as witnesses from out of the District. As these records were here and the witnesses were in New Mexico, we filed a motion asking this Court to authorize subpoenas to bring them here, under the special statute

---

[1] 20 Am.Jur. pp. 861, 862, 863, 865, 866, and Rule 44(c) of Federal Rules of Civil Procedure, 28 U.S.C.A.

allowing that to be done, and providing travel expenses for them. That motion was heard before your Honor, and was overruled. Thereafter we tried to think of some way to get the records here, which were not in our possession, and which we could not obtain. Since we couldn't bring those persons here, and the records were here, it was an insoluble problem to have a person out there identify records here. So we took the deposition of a doctor out there and have evidence that these records left there and went to the Veterans' Administration in Washington, and I believe that we can show that they came from Washington to the United States District Attorney's Office here, and they are in his custody as official documents and official records of an agency of the Government. They are very material to the issues in this case, and I believe that there is no other way in which they can be proven up.

"(By Mr. Gay): Q. Mr. Harrell, how did these come into your possession?

"A. They were received from the Department of Justice in Washington, D. C.

"Mr. Reagan: If the Court please, we object to it. The witness—

"The Court: Just answer the question as to just how you received them is all.

"(By Mr. Gay): They have been in the Office of the United States District Attorney ever since that time, is that correct?

"A. As far as I know, Mr. Gay.

"Q. Do you have anything to show how the Attorney General came into possession of these files?

"A. I have a letter of transmittal, rather, I have a letter from Mr. Petford of the Claims Department of the Department of Justice to the Veterans' Administration requesting files concerning the Veteran Jack Pritchett.

"Mr. Reagan: If the Court please, the letter probably would be the best evidence.

"(By Mr. Gay): Q. Can you find that letter?

"A. Yes, sir, it is in my file there. (Witness leaves the witness stand, goes to Counsel's table and returns with an instrument, a piece of paper, which he hands to Counsel Gay.)

"(By Mr. Gay): Q. This is a letter from—

"The Court: He has already said what was in it. The other side said the letter was the best evidence. Now you can show it to the other side.

"Mr. Gay: We ask that this be marked Defendant's Exhibit No. 2 and offer it in evidence. (Said letter was marked Exhibit No. 2.)

"The Court: He has already testified what was in it, didn't he?

"Mr. Reagan: If the Court please, here is my objection to this file.

"The Court: No, you are objecting to a letter. I believe you said the letter would be the best evidence. They had introduced the letter. Now, let's go on, gentlemen. You are just taking time, both of you. You said the letter was the best evidence, and he has shown you the letter.

"Mr. Reagan: If the Court please, what I am objecting to is the hospital file. I don't know—

"The Court: He hasn't tried to introduce it yet. I have already told him he can't do it without proof. This man doesn't know anything about where he was or anything about it. The Court hasn't budged from that ruling because it is academic. Lawyers don't need to be instructed by the Court on things of that sort. He is just taking up my time and his own here. We are trying to get over the Court's ruling. There is no chance to do that in the world.

"Mr. Gay: Well, if there is no chance—

"The Court: Well, now, there isn't any chance. I have already ruled. If you have any legal ability at all, you know that that is the rule. How are you going to get a document in without some proof of its correctness from the person who made it or had custody or something of that sort of it when it was made? I have already ruled. That is all you can prove by Mr. Harrell. That is all he knows, he told you that in the beginning.

"Mr. Gay: Your Honor, I would like to make one more statement.

"The Court: You don't need to make any statement to me. If you want to ask him anything more—

"Mr. Gay: No, sir.

"The Court: All right. Now, you said you wanted to make a statement to me. I will hear you.

"Mr. Gay: If the Court please, there is a rule of civil procedure about official documents. It says that official papers of the United States Government—

"The Court: This is not an official paper of the United States Government.

"Mr. Gay: I was going to call Your Honor's attention to the case in the footnote at least, it says that maps made in the United States Engineer's Office may be introduced under that.

"The Court: That's right.

"Mr. Gay: And it seems to me that if maps in the Engineer's Office—

"The Court: I can't help how it seems to you. I have ruled now, Counsel.

"Mr. Gay: I beg your pardon."

On the remand of this case in order to prevent unnecessary expense to the parties, there should be a pretrial hearing for the purpose of ascertaining whether there is any real controversy as to the facts relating to the genuine and original character of these records; and their admissibility in evidence, including the pertinent entries therein; and whether, among other things, the entries were made in the usual course of business by competent and honest employees, contemporaneously with the transactions which they purport to record; and, if there is no real issue or controversy about these facts, then the court should call upon the parties to agree to the same, or to consent to the introduction of the records in evidence, upon another trial; but if there is a real controversy, or if the parties refuse to agree, then the court should sustain the motion of appellant, previously denied, for witnesses to be subpoenaed. If unnecessary costs are thereby incurred, they should be assessed against their parties or their attorneys who are at fault, except, of course, that no costs may be assessed against the United States; but this exemption from liability for costs does not apply to any attorney.

The proceeds of this insurance should not be unnecessarily depleted by litigation; and, if the father should be adjudged the beneficiary in the policy, the court should order that the money be paid to him as trustee for the children of the insured as that is the capacity in which he claims the fund. A court of equity has the power to do this in the circumstances. The judgment appealed from is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.